■ In the Matter of the Claim of CAROL BROWN, Respondent, v TIME, INC., et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent.—Appeal from a decision of the Workers' Compensation Board, filed August 10, 1978, as amended in a decision filed November 2, 1978. Joseph Brown, a photographer, was assigned by appellant to photograph the White Mountains of New Hampshire as illustrations for a book. During Brown's two-week assignment, he could not work for other entities. Travel arrangements were made for Brown through the Time, Inc., Travel Bureau. A memorandum was prepared for Brown by the picture editor for Time-Life regarding his assignment. It contained departure and arrival times as well as directions for Brown to meet a Time-Life geologist, who was assigned to work with him on location. The memorandum also contained a "shooting script", setting forth a "very detailed" description of where Brown should travel as well as the types of geological formations he should photograph. Brown could not change the directions of the script without first conferring with the editor. Brown returned film to Time-Life's office where it was reviewed and edited by the picture editor who had the final say regarding what pictures would be published. While on location, Brown called in several times concerning what he had seen, what he had shot, what he thought he could shoot and how he should proceed. He was given instructions regarding pictures he should take under certain weather conditions. If Brown had refused to follow the script, the editor had the right to recommend his discharge. The record shows that Time-Life supplied Brown with a camera, lightmeter and film. He was paid at a rate of $200 per day for 10 days, plus two travel days at $120 per day. On July 5, 1973 Brown fell from a rock cliff and sustained injuries resulting in his death. His widow subsequently filed a claim for death benefits which was controverted on the ground that no employer-employee relationship existed between Time-Life and Brown on the date of the accident. In a decision filed August 10, 1978, a majority of the board found: "based on the credible testimony, that there was sufficient direction, supervision and control of the decedent by the employer, Time Inc., as to constitute an employer-employee relationship within the meaning of the Workers' Compensation Law and that the decedent was an employee of Time Inc. when he sustained [an] accidental injury resulting in his death." "Whether an employment relationship exists is a factual matter which is within the province of the board to decide" (Matter of Crayton v Riverhead Expo Corp., 65 AD2d 831). The principal factors to be considered are the right to control, the method of payment, who furnishes equipment, the right to discharge, and the relative nature of the work (Matter of Wittenstein v Fugazy Cont. Corp., 59 AD2d 249, mot for lv to app den 43 NY2d 648; Matter of Bedder v Gambardella, 49 AD2d 968). While decedent had control over the mechanical aspects of the actual photography, the

record in this case clearly establishes that Time-Life exercised substantial control and supervision over his over-all photographic activities; that he was paid on a per diem basis rather than on a per job basis (see *Matter of Bedder v Gambardella, supra;* 1B Larson, Workmen's Compensation Law, § 44.33 [a]); that Time-Life furnished the decedent with equipment to use while on assignment; and that Time-Life had the right to fire him if he disregarded its instructions. Since there is substantial evidence to support the board's decision, it must be affirmed. Decision affirmed, with costs to the Workers' Compensation Board against the employer and its insurance carrier. Mahoney, P. J., Greenblott, Kane and Mikoll, JJ., concur; Main, J., not taking part.